## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHARON BROKENBOUGH<br>260 Drexel Avenue<br>Lansdowne, PA 19050 | : <br> : <br> : <br> : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO: |
| | : | |
| CHESTER UPLAND SCHOOL<br>DISTRICT<br>232 W. 9th Street<br>Chester, PA 19013 | : <br> : <br> : <br> : | JURY TRIAL DEMANDED |
| Defendants. | : <br> : | |

## COMPLAINT IN CIVIL ACTION

Plaintiff Sharon Brokenbough ("Plaintiff" or "Ms. Brokenbough"), by and through her attorneys, Pozzuolo Rodden, P.C., hereby files her Complaint and Jury Demand against Defendant Chester Upland School District ("CUSD"), and in support thereof avers as follows:

## I.    PRELIMINARY STATEMENT

1.     This action is for claims arising from the employment discrimination, retaliation, and unlawful termination of Plaintiff Ms. Brokenbough by Defendant CUSD under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Equal Pay Act of 1963, as amended, 29 U.S.C. § 206 ("EPA"); under the Pennsylvania Human Relations Act, as amended, 43 Pa.C.S. § 951 et seq. ("PHRA"), and Pennsylvania Equal Pay Law, 43 P.S. §§ 336.1-336.10.

2.     This Complaint seeks equitable and monetary relief for Ms. Brokenbough, including, but not limited to, back pay, front pay, benefits, attorney's fees, costs of this suit, compensatory damages, liquidated damages, punitive damages, reinstatement, interest and all

other legal and equitable relief to which she is entitled for the denial by Defendant of Ms. Brokenbough's right to equal employment opportunity and unlawful employment practices by Defendant, including, but not limited to:

a.      Discrimination against Ms. Brokenbough with respect to the terms, conditions, and privileges of employment because she is a female, African-American over 40 years of age;

b.      Subjecting Ms. Brokenbough to a hostile work environment based on her gender, and race;

c.      Unlawful termination and retaliation against Ms. Brokenbough with respect to the terms, conditions, and privileges of employment for engaging in a protected activity covered under Title VII, the EPA, and the PHRA; and

d.      Paying Caucasian male employees in the same or similar jobs more than Defendant paid or offered to pay Ms. Brokenbough.

## II.   PARTIES

3.      Plaintiff Ms. Brokenbough is an adult individual and resident of the Commonwealth of Pennsylvania, residing at 260 Drexel Avenue, Lansdowne, Delaware County, Pennsylvania 19050.

4.      Upon information and belief, Defendant CUSD is a school district serving the City of Chester, the Borough of Upland and Chester Township in Delaware County, Pennsylvania with a headquarters and principal place of business located at 232 W. 9th Street, Chester, Pennsylvania 19013.

5.      At all times relevant hereto, Defendant continuously conducted business in the City of Chester, Delaware County, Pennsylvania and, upon information and belief, had a least fifteen (15) employees.

III.   **JURISDICTION AND VENUE**

6.     Jurisdiction of the United States District Court of the Eastern District of Pennsylvania is invoked over this lawsuit pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

7.     This Court has supplemental jurisdiction over Plaintiff's state statutory claims under the Pennsylvania Human Relations Act, 43 P.S. § 951 et seq.  and Pennsylvania's Equal Pay Law, 43 P.S. §§ 336.1-336.10 because Plaintiff's claims under the PHRA and Equal Pay Law arise from the same facts and are related to Plaintiff's Title VII and EPA claims and fall within the supplemental jurisdiction of this Court.

8.     The unlawful employment practices of Defendant alleged by Plaintiff Ms. Brokenbough were committed in the City of Chester, Delaware County, Pennsylvania, within the jurisdiction of the United States District Court for the Eastern District of Pennsylvania and therefore, venue lies within the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(b).

IV.   **PROCEDURAL PREREQUISITES**

9.     Plaintiff Ms. Brokenbough has satisfied all conditions precedent to the commencement of this lawsuit.

10.    Specifically, on July 1, 2020, Ms. Brokenbough dual-filed a timely charge of race discrimination, sex discrimination, hostile work environment, EPA violations, and retaliation against Defendant with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

3

11.     Ms. Brokenbough claimed in her charge of discrimination that Defendant subjected her to unlawful discrimination and retaliation based on her race and sex creating a hostile work environment and compensated male employees more than she was paid.

12.     Ms. Brokenbough further claimed that Defendant engaged in retaliation against her for engaging in protected activity under Title VII and PHRA.

13.     By letter dated February 16, 2021, the United States Department of Justice, Civil Rights Division issued Ms. Brokenbough a Right to Sue letter. A true and correct copy of the Right to Sue Letter is attached hereto, made a part hereof and marked **Exhibit "A"**.

V.     **STATEMENT OF FACTS**

     **A.**     **Background of Ms. Brokenbough's Employment with Defendant.**

14.     The Complainant was hired by the Defendant CUSD located in Chester City, Delaware County, Pennsylvania in or about April, 2018 as the District's Chief Operating Officer ("COO").

15.     During her tenure as COO, Plaintiff performed all of her job functions satisfactorily and had no deficient performance write ups, deficiency warnings or other performance issues.

16.     The City of Chester is a financial distressed municipality and the Defendant has been under the supervision of the Commonwealth of Pennsylvania, Department of Education for approximately twenty (20) years because of mismanagement, stark underachievement in student test scores and lack of adequate funding.

17.     As a result, a Receiver is appointed for oversight purposes for the District by the Commonwealth of Pennsylvania, Department of Education who acts as the School Board even though the Defendant continues to maintain an elected School Board.

18.     The elected School Board of Directors sole function under the Receivership is to authorize any changes in school taxes assessed by the District on property owners in the District.

19.     The Plaintiff is qualified for the position as COO based on her education and work experience including her tenure for twelve (12) years prior to hire by Defendant as Director of Finance and Administration, Division of Public Safety of the Hospital of the University of Pennsylvania located in Philadelphia, Pennsylvania, an entity with a multi-billion dollar budget.

20.     At all times relevant hereto during her employment with Defendant, Ms. Brokenbough reported directly to then Superintendent of the Chester Upland School District, Dr. Juan Baughn ("Dr. Baughn").

21.     Dr. Baughn is now the Court-appointed Receiver for the District.

22.     Ms. Brokenbough's job duties for Defendant included overseeing the business office, transportation, maintenance facilities, insurance and risk management for the District.

23.     During the course of her employment with Defendant, Ms. Brokenbough attended School Board meetings, provided financial reports and budgets to the School Board as well as interacted with Board members as necessary.

24.     At all times relevant hereto, Anthony Johnson ("Mr. Johnson") was the elected President of Defendant's School Board.

**B.     Harassment by Anthony Johnson**

25.     Beginning in or about August 2018, Defendant's School Board President, Mr. Johnson, began making numerous non-business related and inappropriate telephone calls to Plaintiff.

26.    These telephone calls were made by Mr. Johnson to Plaintiff's personal, non-District issued cell phone number and many of these telephone calls occurred in the evening and on weekends.

27.    Mr. Johnson made these unwanted telephone calls to Plaintiff late at night, on the weekends and on holidays and his demeanor in these telephone calls was aggressive and demeaning.

28.    The subject of these telephone calls specifically concerned non-School District business and included Mr. Johnson's frequent demand that Plaintiff meet him after work outside of the Defendant's facilities at Pizzeria Uno Bar and Restaurant.

29.    Mr. Johnson has an extremely aggressive, intimidating and threatening manner and used these telephone calls to disparage Dr. Baughn and other members of the Board to Plaintiff and to let Plaintiff know she will have no choice but to give in to him because this is "his town" and he "always gets his way."

30.    Plaintiff asked Mr. Johnson to stop calling her but he continued to persist in making telephone calls to her late at night, on weekends and holidays against her wishes.

31.    One time Mr. Johnson even telephoned Plaintiff on her personal cell phone at night when she was sharing an anniversary celebration with her spouse.

32.    Mr. Johnson has no decision-making authority concerning Plaintiff's job duties and responsibilities, which are controlled by the Receiver, but he continued to call Plaintiff in the evening and on weekends for non-District business even after she asked him to stop the unwanted contact.

33.     The only business-related interaction between Plaintiff and Mr. Johnson concerns finance committee meetings or budgets since Mr. Johnson is a member of the Board's finance committee.

34.     Plaintiff conducts the Board's finance committee meetings where she discusses finance-related issues with the Board members prior to the scheduled public School Board meetings.

35.     Mr. Johnson has, on occasion, contacted Plaintiff to discuss student transportation issues but there is no need to contact on a regular and continuous basis.

36.     However, the business-related contact between Plaintiff and Mr. Johnson is minimal and does not require excessive telephone calls at night, on weekend, and/or on holidays.

**C.      Defendant's Failure to Correct Mr. Johnson's Harassing Conduct**

37.     Plaintiff reported Mr. Johnson's inappropriate and unwelcome telephone calls to her supervisor, Dr. Baughn, who was the Superintendent of the District up until about May 2020, and requested that Dr. Baughn direct Mr. Johnson to stop calling her.

38.     Plaintiff informed Dr. Baughn that Mr. Johnson's telephone calls made her feel uncomfortable, were harassing, and she viewed his persistent contact as unwelcome and inappropriate.

39.     Instead of investigating Plaintiff's complaint and directing Mr. Johnson to stop telephoning Plaintiff, Dr. Baughn reprimanded Plaintiff for not returning the telephone call of Mr. Johnson made to her one evening when she was celebrating her wedding anniversary with her spouse.

40.    The topic of his telephone call was the usual – gossip, disparagement, and asking Plaintiff for a date – not anything relating to District business or Plaintiff's job duties and/or responsibilities.

41.    When Dr. Baughn failed to take her complaints against Mr. Johnson seriously, Plaintiff asked Mr. Johnson again to stop calling her and to make any District-related requests to her in writing.

42.    In response, Mr. Johnson angrily raised his voice and yelled at Plaintiff in a threatening manner, "If you want to start playing these games......let's play."

43.    Plaintiff was also expressly warned by other employees of Defendant that because she rebuffed Mr. Johnson's unwelcome advances she was on his "list" and in his "cross-hairs" for continued harassment and he would take aggressive actions to have her fired from her employment as COO with the Defendant.

**D.    Retaliation Against Ms. Brokenbough for Reporting Mr. Johnson's Harassment**

44.    Mr. Johnson increased his efforts to harass Plaintiff by retaliating against her by purposely and intentionally undermining her authority and insisting that his friend, the maintenance department director, be removed from Plaintiff's supervision.

45.    This maintenance department director. Marvin Newton ("Newton") who previously reported to Plaintiff threatened a local fire marshal with bodily harm during a public safety visit to the District, which resulted in the fire marshal closing down three (3) of the Defendant's schools.

46.    The maintenance department director in question is a friend and crony of Mr. Johnson and Mr. Johnson regularly interfered with Newton's job responsibilities while usurping Plaintiff's authority.

47.     In the course of her employment with Defendant, Plaintiff recommended that the maintenance department director receive management and professional coaching to continue in his job due to his aggressive and threatening behavior culminating in the closure of three (3) of the Defendant's schools.

48.     Newton, the maintenance department director agreed to the coaching and training.

49.     When this matter was discussed with the School Board in a finance committee meeting, Mr. Johnson became extremely angry, threatening and agitated and accused Plaintiff of taking punitive action against the maintenance department director/employee, even though Newtown reported directly to Plaintiff and not to the School Board.

50.     Thereafter, upon information and belief, Mr. Johnson intervened with the Superintendent and the Receiver and supervision of Newton and the entire maintenance department was removed from Plaintiff's job duties and responsibilities.

51.     Mr. Johnson angrily and menacingly told Plaintiff the maintenance department director, Newton, works for him and not Plaintiff, and that she had absolutely no right to exercise any supervisory authority over him.

52.     Despite the fact that Newton reported directly to Plaintiff, he regularly had facilities meetings without her knowledge and openly and blatantly ignored her directives and refused to take supervision from Plaintiff.

53.     In addition, Newton, her direct report, a male, was treated differently and more favorably than Plaintiff, female COO, was treated by Defendant.

54.     Plaintiff also addressed concerns and rumors with Dr. Baughn that Newton was not physically present at Defendant's facilities when he claimed he was working for the Defendant but was "moonlighting" at another job for another employer, at the exact same time

he should have been physically working for the District, separate and apart from his employment as a department manager with Defendant.

55.    The Defendant ignored these concerns and failed to investigate or address the claims because Newton was a Johnson-crony.

56.    Further, Mr. Newton, Plaintiff's subordinate, ignored Plaintiff's direction and hired unqualified staff without Plaintiff's approval but with the approval and at the direction of Mr. Johnson, further usurping Plaintiff's authority because of his relationship with Mr. Johnson.

57.    When Plaintiff complained to Dr. Baughn that Newton was insubordinate and that Mr. Johnson regularly and continuously undermined and usurped Plaintiff's authority, Dr. Baughn supported Mr. Johnson's and Newton's actions even when Newton hired an unqualified employee over the objections of Plaintiff.  The actions of this employee resulted in costly and serious damage to Defendant's property.

58.    Mr. Johnson controls, manipulates and runs the District and his continued interference in retaliation for Plaintiff rebuffing his advances resulted in Plaintiff being stripped of her duties and the ability to effectively perform many of her job functions.

59.    Further in retaliation for rebuffing his advances, Mr. Johnson began a verbal assault on Plaintiff's reputation and character in the community in an attempt to ruin her reputation, force her out of her position as COO, and undermine her authority with her subordinates.

60.    Mr. Johnson continually and persistently threatened, bullied, and undermined Plaintiff's authority and role as COO and proclaims that it is up to him who is hired or fired for the District, and not the Plaintiff.

61.     On September 11, 2019, Plaintiff had a regularly-scheduled meeting with Dr. Baughn and during this meeting, she informed Dr. Baugh that Mr. Johnson was maligning her reputation, attacking her work and speaking negatively about her credentials and ability to do her job in the Chester School District community.

62.     Dr. Baughn told Plaintiff to not worry about Mr. Johnson's negative comments and threats and again took no corrective action to stop Mr. Johnson's offensive and appalling behavior.

63.     Dr. Baughn then advised Plaintiff that Mr. Johnson was coming to her office to visit her, despite her complaints of unwelcome contact, harassment, and retaliation.

64.     Finally on October 18, 2019 when no corrective action was taken in response to her verbal complaints about the offensive treatment of Mr. Johnson, Plaintiff submitted a written complaint of continuous and ongoing harassment by Mr. Johnson to Dr. Baughn.  A true and correct copy of Complainant's written complaint is attached hereto, made a part hereof and marked **Exhibit "B."**

65.     This written complaint was made in writing directly to Dr. Baughn, Plaintiff's immediate supervisor at all times relevant hereto.

66.     The complaint was not made to Human Resources because there was no Human Resources director at the time and Plaintiff, as COO, was filling the role until Defendant appointed an interim Human Resources director.

**E.      Defendant's Culture of Demeaning, Harassing Behavior Towards Women**

67.     In addition to the unwelcome and harassing contact by Mr. Johnson, Plaintiff further stated that Defendant "has a culture of belittling and having a dismissive demeanor towards women."

68.    Plaintiff was regularly referred to as "her" and "she" and women as "gals" in meetings, not by her legal name, which she considers derogatory, demeaning and harassing.

69.    Plaintiff was treated differently than male management employees by the Defendant in its ongoing systematic and pervasive discriminatory treatment of females, including, but not limited to:

    a.  Failing to offer Plaintiff an employment contract despite numerous promises to do so since her date of hire even though Plaintiff's Caucasian predecessor had an employment contract;

    b.  Defendant actually provided Plaintiff a draft agreement at one point and then failed to act upon it, misleading her once again;

    c.  Failing to provide Plaintiff administrative help and support for her department despite numerous requests for such employee-assistance when her direct reports had secretaries and other administrative support;

    d.  Male principals and other management employees were allowed by Defendant to threaten, yell at, bully and belittle Plaintiff and other female employees in her department without any action, consequences or ramifications from the Defendant;

    e.  Defendant permitted Mr. Johnson to harass, intimidate, threaten, bully and undermine the authority of Plaintiff as well as other female management employees; and

    f.  Defendant has long been aware of Mr. Johnson's harassing, threatening, discriminatory and intimidating conduct directed at female employees and has taken no corrective action to stop it.

70.     Plaintiff has also made cost-saving suggestions to the District in her capacity as COO, specifically to Dr. Baughn and the Receiver, which were dismissed without consideration.

71.     When the same or similar suggestions were made by male employees, the suggestions were considered and adopted without objection.

72.     By way of example, Plaintiff suggested that the District outsource grounds keeping and District security as a cost savings measure, which was summarily rejected, but when the same suggestion was made by a male employee of Defendant, Jack Pund ("Pund"), the idea was approved without objection.

73.     In contrast to Plaintiff, Pund is a Mr. Johnson direct hire and loyalist.

74.     After Plaintiff made the initial complaint of harassment and discrimination against Mr. Johnson's unwelcome advances, another of his cronies, Ronald Simonson ("Simonson"), began to harass, threaten and attack Plaintiff and her job performance.

75.     Pund was hired by Defendant to draft a recovery plan for the District to submit for Pennsylvania Department of Education and court approval.

76.     In the spring of 2020, after Plaintiff submitted her written complaint of harassment, unwelcome contact and unlawful discrimination, which remained unresolved, Plaintiff discovered that her position as COO was written out of the District's recovery plan. Upon information and belief, Plaintiff's position was cut from the recovery plan based on the demands and at the direction of Mr. Johnson.

77.     After Plaintiff's constructive discharge, the COO position was added back to the District's recovery plan with the position filled by two different, Caucasian males.

**F.     Defendant's Failure to Comply With Its Written Policy Regarding Reports of Sexual Harassment and its Retaliation Against Plaintiff for Making a Report**

78.     Defendant's written policy defines sexual harassment as "unwelcome sexual advances...and other inappropriate verbal, written, graphic or physical conduct of a sexual nature" when, as here, "submission to or rejection of such conduct is the basis for employment decisions affecting the individual" -- such as in the case at bar, removing responsibilities for certain departments from the COO.

79.     Further, the Defendant's written policy provides that an investigation will commence in response to a complaint of sexual harassment with an investigative report issued within fifteen (15) days of the date of the complaint.

80.     In violation of the Defendant's written policy, no investigation was commenced whatsoever in response to Plaintiff's complaint until more than a month after her complaint was made.

81.     In addition, no investigative report was issued within fifteen (15) days of the date of the complaint.

82.     In fact, an investigative report was not issued until more than seven (7) months after Plaintiff made her written complaint.

83.     On or about November 9, 2019, after receiving no response to her written complaint of harassment, Plaintiff sent an email to the then Receiver for Defendant, Peter Barsz ("Barsz") with a copy of her October 18, 2019 written complaint.

84.     Mr. Barsz responded to Plaintiff the same day by email and indicated that he was unaware of her complaint and would send her complaint to Defendant's attorneys and discuss the matter with her the following week.

85.     No discussion of the complaint ever occurred with Receiver Barsz or his successor.

86.     Thereafter, instead of addressing Plaintiff's complaints of unlawful discrimination, the Defendant retaliated against Plaintiff by and through the Receiver, as follows:

(a)     the Receiver demanded that Plaintiff provide job descriptions for existing employees of Defendant before a contract for Plaintiff would be discussed (it never was discussed);

(b)     Principal Cameron accused Plaintiff of making serious errors which were instead discovered to be made by Principal Cameron's direct reports;

(c)     In a degrading and sexist manner, Barsz referred to Plaintiff as the "Accounts Payable Director" instead of her title, COO; and

(d)     Barsz purposely and intentionally excluded Plaintiff from a meeting regarding fiscal management of the District with the Pennsylvania Department of Education, which she normally attended.  Plaintiff was invited to the meeting only when the representative from the Pennsylvania Department of Education asked why the District's COO was not present at the meeting.

87.     After Plaintiff made her written complaint on October 18, 2019, Mr. Johnson increased his harassment of Plaintiff and other School Board members joined in the harassment, in retaliation for her complaint.

88.     At the November 2019 Board meeting where a resolution was presented to the Board to approve the investigation of Plaintiff's claim, Mr. Johnson purposely sat next to Plaintiff and moved his chair very close to her chair claiming he needed to share her meeting agenda, encroaching on her personal space, making her feel intimidated and uncomfortable.

Normally, Mr. Johnson's regular seat is two chairs away from Plaintiff's chair and he is provided a copy of every meeting agenda.

89.     Specifically, on December 9, 2019, Plaintiff was detained in the hallway outside of Dr. Baughn's office, by Board member Tyra Quail, who is part of Mr. Johnson's inner circle, who made inappropriate and offensive comments to Plaintiff and another female employee including, but not limited to: "I think my grandson is on drugs…his name is Desmond and he was on live last night saying…..you know why Nicki Minaj is not having sex anymore?.....because she is having it with me in the studio…yes….ball licking sex..."

90.     This Board member never spoke to Plaintiff in that manner in the past and Plaintiff considered her comments to be retaliatory, disgusting and offensive and they made her extremely uncomfortable.

91.     In addition, the unwelcome telephone calls from Mr. Johnson continued and did not stop despite Plaintiff's written complaint of unwelcome contact and harassment.

92.     No corrective action was taken by either Dr. Baughn (Superintendent) or Gregory Thornton (the new Receiver) to stop Mr. Johnson from harassing, intimidating and threatening Plaintiff.

93.     Plaintiff also started to fear for her safety because of Mr. Johnson's threats and unwelcome behavior. Notably, Mr. Johnson has a history of threats of physical harm to anyone that challenges him and Plaintiff was afraid that Mr. Johnson would physically harm her.

94.     Mr. Johnson made threatening statements to Plaintiff and other employees claiming he could do anything he wanted – this is "his town" and if he was charged with assault he would be out of jail in less than an hour.

95.     Further, shortly thereafter, one evening when Plaintiff left the District's office for the day she discovered a nail in the tire of her vehicle stranding her in the parking lot until the tire could be changed.

96.     In the Fall of 2019, Plaintiff began to experience stress-related health conditions including, but not limited to fear, anxiety, headaches, inability to sleep and digestive issues caused by the ongoing harassment, intimidation and unwelcome telephone calls and contact.

97.     In December 2019 and January 2020, Mr. Johnson continued to make unwanted, unwelcome and harassing telephone calls to the Plaintiff.

98.     Other Boards members began to make similar harassing calls to Plaintiff and demand that she hold committee meetings or attend committee meetings which was not the Defendant's practice.

99.     In late November, early December 2019, Plaintiff was contacted by attorney Renee Smith ("Attorney Smith") who indicated she was hired by Defendant to investigate Plaintiff's complaint.

100.    Plaintiff met with Attorney Smith in person and had several telephone conferences with her, with the last telephone conference occurring in April 2020.

101.    In January 2020, Plaintiff advised Attorney Smith that Mr. Johnson and other Board members continued to subject her to continued unwelcome contact, intimidation and retaliation for her written harassment complaint she filed about Mr. Johnson's conduct.

102.    Despite Attorney Smith's investigation (began long after the time permitted by Respondent's policy) the harassing contact continued and Defendant including Dr. Baughr. did absolutely nothing to stop the unwelcome contact, intimidation and retaliation of Plaintiff despite being aware of the ongoing discriminatory treatment of Plaintiff.

### G.   Defendant's Constructive Discharge of Plaintiff

103.   Plaintiff's physical and psychological health condition deteriorated as the unwelcome contact and retaliation from Mr. Johnson and other Board members continued and escalated.

104.   As a result of the continuing harassment and retaliation and Defendant's failure to take any steps to stop it causing Plaintiff's deteriorating health condition, Plaintiff requested and was approved for Family Medical Leave beginning on January 21, 2020.

105.   This continuing harassment and retaliation which Defendant did not stop caused Plaintiff to seek medical and psychological treatment.

106.   During the time Plaintiff was on Family Medical Leave, Mr. Johnson and other Board members continued to telephone her.

107.   Mr. Johnson's contact was always of a non-business nature with the same unwelcome, harassing contact continuing despite Plaintiff's approved Family Medical Leave period.

108.   Plaintiff's Family Medical Leave ended on March 25, 2020 and Plaintiff was cleared by her doctor to return to work remotely in light of the COVID-19 pandemic.

109.   Plaintiff did return to work remotely on March 25, 2020 but was surprised to discover that she in fact was replaced by a Caucasian male, James Wigo, Sr. ("Wigo").

110.   Plaintiff was discovered that District employees had been informed by Wigo that Plaintiff's employment as COO with the Defendant had been terminated.

111.   Wigo was hired under a written contract at a rate of pay substantially higher than Plaintiff and was provided a written contract which Defendant failed to provide to Plaintiffo.

112.    At the time of her hire, Plaintiff was promised a written employment contract, similar to that of her predecessor but no employment contract was ever formally offered to Plaintiff.

113.    Plaintiff again asked Dr. Baughn in February 2019 when she would receive a written employment contract and again requested that a written employment contract be drafted as was promised at the time of her hire.

114.    This request was never addressed, even though Plaintiff's predecessor had a written contract, and subsequently Wigo, a Caucasian male, was provided with a written contract.

115.    Plaintiff informed Attorney Smith that she viewed Mr. Wigo's hire as a constructive discharge of her from her position as COO.

116.    Defendant has never addressed this claim and Defendant's investigation did not address this claim by Plaintiff.

117.    Plaintiff discovered that during her approved period of Family Medical Leave, Defendant directed that Plaintiff's office be cleared out and her personal effects be packed up and removed from her office, without notifying or advising Plaintiff of this directive.

118.    In or around March 2020, Dr. Baughn actually asked Plaintiff if she knew of the status of the investigation into her October 18, 2019 written complaint of harassment even though he was her direct supervisor and the Superintendent of the District.

119.    After her return to work, despite the unresolved harassment complaint and continued harassment, Defendant demanded that Plaintiff participate in committee and board meetings and interact with the Board including Mr. Johnson.

120.    When Plaintiff reminded Dr. Baughn and then Receiver Gregory Thornton of her unresolved complaint, she was threatened and informed there would be consequences if she did not communicate with the Board and attend meetings with the Board and interact with Mr. Johnson despite Defendant's failure to take any corrective action to prevent further unwelcome contact, harassment, discrimination and/or retaliation.

121.    Finally on June 9, 2020, Defendant's counsel issued its report on the investigation of Plaintiff's claims more than eight (8) months after Plaintiff's written October 18, 2019 complaint.

122.    Significantly, the report also contained several other claims of harassment against Anthony Johnson by other employees of Defendant.

123.    The report contained significant findings, including that Dr. Baughn considered Anthony Johnson a problem but preferred not to deal with him, allowing him to harass, intimidate and threaten Plaintiff and other District employees instead.

124.    The report further support many of the allegations contained in Plaintiff's written complaint including that: (a) the Defendant is aware of Mr. Johnson's conduct and knowingly and purposely does not address it; (b) Dr. Baughn finds Anthony Johnson to be very difficult to deal with; and (c) certain of Defendant's employees circumvent the chain of command and report directly to Anthony Johnson and do his bidding instead of following the direction of his/her supervisor without repercussions or consequences.

125.    The report made certain recommendations including, but not limited to:

      (a)     requiring Anthony Johnson to attend individual training on professionalism and workplace respect;

(b)     Anthony Johnson has a history or complaints made against him by Defendant's employees and a history of not getting along with employees;

(c)     the Board and employee roles and responsibilities need to be defined as well as how the Board and employees should interact;

(d)     investigate Plaintiff's constructive discharge claim; and

(e)     protect Plaintiff from retaliation.

126.    Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission within the required time because Defendant did not adopt a corrective action plan and took no action whatsoever to prevent continued harassment, intimidation and retaliation of Plaintiff.

127.    Subsequently, after Plaintiff filed her Charge of Discrimination, the Caucasian male hired to replace her as COO, Wigo, mysteriously disappeared from the workplace.

128.    After filing her Charge of Discrimination, the work environment with Defendant became even more intolerable for Plaintiff after her verbal and written complaints of harassment and discrimination were not timely investigated nor remedied, and in fact the harassment continued and escalated even after the District's attorneys issued a report with recommendations.

129.    Consequently, based upon Defendant's actions and inactions, constructively discharging Plaintiff, Plaintiff had no choice but to take corrective action on her own, which forced her to resign her position of COO with Defendant to protect her physical and mental health from continued retaliation and ongoing systemic and pervasive harassment.

130.    Thereafter, Defendant again hired a Caucasian male, with no public school finance background to replace Plaintiff, an African American female.

131.    Upon information and belief, the Caucasian male hired to replace Plaintiff after she was constructively discharged and forced to submit her resignation, is paid substantially more compensation than Plaintiff's salary with the Defendant.

**COUNT I**
**VIOLATION OF TITLE VII – SEX DISCRIMINATION**
**Sharon Brokenbough vs. Chester Upland School District**

132.    Plaintiff Brokenbough incorporates by reference the allegations set forth in paragraphs 1 through 131 of her Complaint as if the same has been more fully set forth herein.

133.    The foregoing conduct by Defendant constitutes unlawful harassment and discrimination against Plaintiff Brokenbough on the basis of her sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* ("Title VII").

134.    In addition, upon information and belief, the Caucasian male employees Defendant hired to replace Plaintiff are/were paid salary and benefits in excess of amounts paid to Plaintiff and each of them was provided with a written employment contract unlike Plaintiff.

135.    The Caucasian male employees Defendant replaced Plaintiff with are at least equal to or subordinate to her in terms of experience.

136.    Pursuant to Title VII, no employer, such as the Defendant, shall discriminate on the basis of sex and pay employees of one sex lower wages than employees of the opposite sex working in an equal or comparable position.

137.    In violation of Title VII, Plaintiff was paid less than the Caucasian male employee Defendant hired to replace Plaintiff while she was on approve FMLA and the Caucasian male employee hired to replace her when she was constructively discharged and, upon information and belief, both Caucasian male employees were given a written contract, which Plaintiff was promised but never materialized.

138.    The duties performed by the Caucasian male employees hired to replace Plaintiff are essentially identical to Plaintiff's duties and the performance of which requires equal skill, effort and responsibility under similar working conditions.

139.    Upon information and belief, the difference in salary and compensation wages and the provision of a written contract to the Caucasian male employees, but not Plaintiff, is based upon Plaintiff's sex, female.

140.    The aforesaid discriminatory treatment of Plaintiff was the direct and proximate result of Plaintiff being a member of a protected class under Title VII, specifically, because she is female.

141.    Any purported reason offered by Defendant for its treatment of Plaintiff is merely pretext.

142.    Defendant's discriminatory and wrongful acts are willful, intentional, and purposeful within the meaning of Title VII and warrant the imposition of liquidated damages.

143.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff sustained permanent and irreparable harm, resulting in constructive discharge and the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, loss of earning capacity, plus back pay and front pay, past and future wages and interest thereon, pension and retirement and other lost benefits, and attorney's fees and costs.

144.    As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of Title VII, Plaintiff suffered severe emotional stress, embarrassment, humiliation, loss of reputation and loss of self-esteem.

WHEREFORE, Plaintiff Sharon Brokenbough most respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester Upland School District, and Order that:

a.       Defendant compensate Plaintiff with an award of front pay, back pay, past and future wages, lost earning capacity, pension and retirement and other lost benefits;

b.       Defendant compensate Plaintiff for the wages and other benefits of employment lost, because of its unlawful conduct;

c.       Defendant pay punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment and other non-pecuniary losses as allowable;

d.       Defendant pay to Plaintiff pre and post-judgment interest, costs of suit and attorney and expert fees as allowed by law; and

e.       Granting any other such relief as this Honorable Court deems just and fair.

## COUNT II
## VIOLATION OF TITLE VII – RACE DISCRIMINATION
### Sharon Brokenbough vs. Chester Upland School District

145.    Plaintiff Brokenbough incorporates by reference the allegations set forth in paragraphs 1 through 144 of her Complaint as if the same has been more fully set forth herein.

146.    The foregoing conduct by Defendant constitutes unlawful harassment and discrimination against Plaintiff Brokenbough on the basis of her race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* ("Title VII").

147.    In addition, upon information and belief, the Caucasian male employees Defendant hired to replace Plaintiff are/were paid salary and benefits in excess of amounts paid to Plaintiff and each of them was provided with a written contract unlike Plaintiff.

148.    The Caucasian male employees Defendant replaced Plaintiff with are at least equal to or subordinate to her in terms of experience.

149.    Pursuant to Title VII, no employer, such as the Defendant, shall discriminate on the basis of race and pay employees of one race lower wages than employees of a different race working in an equal or comparable position.

150.    In violation of Title VII, Plaintiff was paid less than the Caucasian male employee Defendant hired to replace Plaintiff while she was on approve FMLA and the Caucasian male employee hired to replace her when she was constructively discharged and, upon information and belief, both Caucasian male employees were given a written contract, which Plaintiff was promised but never materialized.

151.    The duties performed by the Caucasian male employees hired to replace Plaintiff are essentially identical to Plaintiff's duties and the performance of which requires equal skill, effort and responsibility under similar working conditions.

152.    Upon information and belief, the difference in salary and compensation wages and the provision of a written contract to the Caucasian male employees, but not Plaintiff, is based upon Plaintiff's race, African American.

153.    The aforesaid discriminatory treatment of Plaintiff was the direct and proximate result of Plaintiff being a member of a protected class under Title VII, specifically, because she is African American.

154.   Any purported reason offered by Defendant for its treatment of Plaintiff is merely pretext.

155.   Defendant's discriminatory and wrongful acts are willful, intentional, and purposeful within the meaning of Title VII and warrant the imposition of liquidated damages.

156.   As a direct and proximate result of Defendant's violation of Title VII, Plaintiff sustained permanent and irreparable harm, resulting in constructive discharge and the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, loss of earning capacity, plus back pay and front pay, past and future wages and interest thereon, pension and retirement and other lost benefits, and attorney's fees and costs.

157.   As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of Title VII, Plaintiff suffered severe emotional stress, embarrassment, humiliation, loss of reputation and loss of self-esteem.

WHEREFORE, Plaintiff Sharon Brokenbough most respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester Upland School District, and Order that:

a.   Defendant compensate Plaintiff with an award of front pay, back pay, past and future wages, lost earning capacity, pension and retirement and other lost benefits;

b.   Defendant compensate Plaintiff for the wages and other benefits of employment lost, because of its unlawful conduct;

c.   Defendant pay punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment and other non-pecuniary losses as allowable;

d.      Defendant pay to Plaintiff pre and post-judgment interest, costs of suit and attorney and expert fees as allowed by law; and

e.      Granting any other such relief as this Honorable Court deems just and fair.

## COUNT III
## VIOLATION OF TITLE VII – HOSTILE WORK ENVIRONMENT
### Sharon Brokenbough vs. Chester Upland School District

158.    Plaintiff Brokenbough incorporates by reference the allegations set forth in paragraphs 1 through 157 of her Complaint as if the same has been more fully set forth herein.

159.    The foregoing conduct by Defendant constitutes unlawful harassment and discrimination and creation of a hostile work environment which was severe and pervasive against Plaintiff on the basis of her sex, female, and race, African American, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* ("Title VII").

160.    The aforesaid discriminatory treatment of Plaintiff was the direct and proximate result of Plaintiff being a member of protected classes, female and African American, both protected classes under Title VII.

161.    Defendant's discriminatory and wrongful acts are willful, intentional, and purposeful within the meaning of Title VII and warrant the imposition of liquidated damages.

162.    As a direct and proximate result of Defendant's violation of Title VII, Plaintiff sustained permanent and irreparable harm, resulting in constructive discharge and the loss of her employment, which caused her to sustain a loss of earnings, plus the value of certain benefits, loss of earning capacity, plus back pay and front pay, past and future wages and interest thereon, pension and retirement and other lost benefits, and attorney's fees and costs.

163.    As a further direct result of the aforesaid unlawful discriminatory employment practices engaged in by Defendant in violation of Title VII, Plaintiff suffered severe emotional stress, embarrassment, humiliation, loss of reputation and loss of self-esteem.

WHEREFORE, Plaintiff Sharon Brokenbough most respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester Upland School District, and Order that:

a.    Defendant compensate Plaintiff with an award of front pay, back pay, past and future wages, lost earning capacity, pension and retirement and other lost benefits;

b.    Defendant compensate Plaintiff for the wages and other benefits of employment lost, because of its unlawful conduct;

c.    Defendant pay punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment and other non-pecuniary losses as allowable;

d.    Defendant pay to Plaintiff pre and post-judgment interest, costs of suit and attorney and expert fees as allowed by law; and

e.    Granting any other such relief as this Honorable Court deems just and fair.

## COUNT IV
## VIOLATION OF EQUAL PAY ACT
### Sharon Brokenbough vs. Chester Upland School District

164.    Plaintiff Brokenbough incorporates by reference the allegations set forth in paragraphs 1 through 163 of her Complaint as if the same has been more fully set forth herein.

165.    Upon information and belief, the male employee hired to replace Plaintiff while she was out on approved FMLA leave earns compensation and benefits in excess of what Defendant paid Plaintiff.

166.    Additionally, the male employee hired to replace Plaintiff was provided with a written contract, a benefit that was promised to Plaintiff but was never provided.

167.    This male employee has essentially all of the same job duties and functions as Plaintiff.

168.    Upon information and belief, this male employee has an education and background which is at most equal to that of Plaintiff.

169.    Pursuant to the Equal Pay Act of 1963, as amended, 29 U.S.C. § 201, et seq. ("EPA"), no employer, such as the Defendant, shall discriminate on the basis of sex and pay employees of one sex lower wages than employees of the opposite sex working in an equal or comparable position.

170.    In violation of the EPA, Plaintiff was paid less than the male Defendant hired to replace Plaintiff when she was constructively discharged.

171.    The duties performed by the male employees Defendant replaced Plaintiff with are substantially similar to, if not identical to, Plaintiff's duties and the performance of which require equal skill, effort and responsibility under similar working conditions.

172.    Upon information and belief, the difference in salary and compensation wages, and the provision of a written contract to the male employees and not Plaintiff, is based upon Plaintiff's sex, female.

173.    Any contrary reason offered by Defendant is merely a pretext for Defendant's discriminatory conduct.

174.    Plaintiff prays that the Defendant be required to provide all available remedies to her under the Equal Pay Act including the difference between her pay and the male employee Defendant hired to replace her when she was constructively discharged.

WHEREFORE, Plaintiff Sharon Brokenbough most respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester Upland School District, and Order that:

a.      Defendant pay Plaintiff the difference between her salary, compensation and benefits and the salary, compensation and benefits of the male employee hired to replace her when she was constructively discharged, plus pre and post-judgment interest, costs of suit and attorney and expert fees as allowed by law; and

b.      Granting any other such relief as this Honorable Court deems just and fair.

**COUNT V**
**RETALIATION**
**VIOLATION OF TITLE VII AND EQUAL PAY ACT**
**Sharon Brokenbough vs. Chester Upland School District**

175.    Plaintiff Brokenbough incorporates by reference her allegations set forth at Paragraphs 1 through 174 of her Complaint as if the same has been more fully set forth at length herein.

176.    Plaintiff was subjected to animosity and hostility and was subject to constructive discharge and employment termination for engaging in protected activities and for requesting the same or similar treatment as all other employees of Defendant.

177.    At all times material hereto, Defendant acted by and through its authorized agents, servants, workers and/or employees, acting in the course and scope of their employment with Defendant, in the furtherance of Defendant's business by retaliating against Plaintiff for engaging in protected activity which constitutes a violation of the Title VII and the EPA.

178.    Plaintiff engaged in protected activity under Title VII and the EPA when she reported harassment and a hostile work environment to her supervisors and asked for the same or

similar benefits, including a written contract, which were provided to similarly situated Caucasian male employees and former employees.

179.    In response to Plaintiff engaging in protected activities, Plaintiff was subjected to further, escalated harassment, animosity, hostility, name calling and constructive discharge.

180.    After multiple verbal reports of the harassment and discrimination Plaintiff endured, with no action taken by Defendant, Plaintiff made a written complaint of continuous and ongoing harassment by Anthony Johnson to her supervisor, Dr. Juan Baughn, Superintendent, on October 18, 2019.

181.    Despite follow up by Plaintiff, Defendant failed to follow its own written "Complaint Procedure" and no investigation or written report was issued until more than eight (8) months later in or about in June 2020.

182.    Further, when the written report was finally issued, Defendant did not implement the recommendations made by the report or take any corrective action to address Anthony Johnson's inappropriate and harassing behavior.

183.    Due to the intolerable, extreme retaliation and harassment she suffered, Plaintiff was forced to take a period of approved medical leave under the Family Medical Leave Act.

184.    When she returned to work in March of 2020, Plaintiff discovered that in retaliation for her complaints of harassment and discrimination, a Caucasian male was hired to fill her position as COO.

185.    Plaintiff filed her Charge of Discrimination on July 1, 2020.

186.    Subsequently thereafter, based upon her filing her Charge of Discrimination and the resulting ongoing retaliation, harassment and discrimination, Plaintiff suffered an adverse

employment action whereby she was constructively discharged and forced to resign her position as COO in retaliation for her engaging in protected activity in violation of Title VII and the EPA.

187.    Plaintiff engaging in protected activity under Title VII and the EPA was the cause in fact of Defendant constructively discharging her employment and the reasons given by Defendant are nothing more than pretext for unlawful discrimination.

188.    Defendant's discriminatory and wrongful acts are willful, intentional, and purposeful within the meaning of Title VII and the EPA and warrant the imposition of liquidation damages.

WHEREFORE, Plaintiff Sharon Brokenbough most respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester Upland School District, and Order that:

a.    Defendant compensate Plaintiff with an award of front pay, back pay, past and future wages, lost earning capacity, pension and retirement and other lost benefits;

b.    Defendant compensate Plaintiff for the wages and other benefits of employment lost, because of its unlawful conduct;

c.    Defendant pay punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment and other non-pecuniary losses as allowable;

d.    Defendant pay to Plaintiff pre and post-judgment interest, costs of suit and attorney and expert fees as allowed by law; and

e.    Granting any other such relief as this Honorable Court deems just and fair.

## COUNT VI
## VIOLATIONS OF PENNSYLVANIA HUMAN RELATIONS ACT
### Sharon Brokenbough v. Chester Upland School District

189.    Plaintiff Brokenbough incorporates by references the allegations set forth at Paragraphs 1 through 188 of her Complaint as if the same has been more fully set forth at length herein.

190.    Plaintiff reasserts and re-alleges each and every allegation and claim as set forth at Counts I through V of her Complaint, as all such actions constitute violation of the Pennsylvania Human Relations Act ("PHRA"), as the PHRA contains the same protections as the Title VII and is interpreted identically under the jurisprudence of the Third Circuit.

191.    Based upon the foregoing, Plaintiff Brokenbough alleges that the Defendant violated the PHRA by discriminating against her based on her race, African American, and sex, female, creating a hostile work environment causing severe and pervasive harm to Plaintiff Brokenbough.

192.    All of the actions as aforesaid constitute violations of and retaliation under the PHRA.

193.    Plaintiff Brokenbough prays that Defendant be required to provide all appropriate remedies to Plaintiff Brokenbough under the PHRA.

WHEREFORE, Plaintiff Sharon Brokenbough most respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester Upland School District and Order that:

a.    Defendant compensate Plaintiff with an award of front pay, back pay, past and future wages, lost earning capacity, pension and retirement and other lost benefits;

b.      Defendant compensate Plaintiff for the wages and other benefits of employment lost, because of its unlawful conduct;

c.      Defendant pay punitive damages, liquidated damages, compensatory damages for future pecuniary losses, pain, suffering, inconvenience, mental anguish, loss of employment and other non-pecuniary losses as allowable;

d.      Defendant pay to Plaintiff pre and post-judgment interest, costs of suit and attorney and expert fees as allowed by law; and

e.      Granting any other such relief as this Honorable Court deems just and fair.

### COUNT VII
### VIOLATION OF PENNSYLVANIA'S EQUAL PAY LAW
### Sharon Brokenbough v. Chester Upland School District

194.    Plaintiff Brokenbough incorporates by reference the allegations set forth in paragraphs 1 through 193 of her Complaint as if the same has been more fully set forth herein.

195.    As stated above, upon information and belief, Plaintiff was paid less in salary than the salary paid to Caucasian, male employees who held her same position, COO, with the same job duties and comparable experience and background.

196.    Further, upon information and belief, the prior Caucasian male COO and the Caucasian male COOs hired in place of Plaintiff when she was constructively discharged were all provided with written contracts - which was promised to Plaintiff but never provided.

197.    Pursuant to Pennsylvania's Equal Pay Laws, 43 P.S. §§ 336.1-336.10, no employer, such as the Defendant, shall discriminate on the basis of sex and pay employees of one sex lower wages than employees of the opposite sex working in an equal or comparable position.

198.    The duties performed by the male employees holding the position of COO are substantially similar to Plaintiff's duties and the performance of which require equal skill, effort and responsibility under similar working conditions.

199.    Upon information and belief, the difference in wages and lack of a written contract for Plaintiff is solely based upon Plaintiff Brokenbough's sex, female.

200.    Based upon the foregoing, Plaintiff Brokenbough alleges that the Defendant violated Pennsylvania's Equal Pay Laws and Defendant should be required to provide all appropriate remedies to Plaintiff Brokenbough under Pennsylvania's Equal Pay Laws.

WHEREFORE, Plaintiff Sharon Brokenbough most respectfully requests that this Honorable Court enter judgment in her favor and against Defendant Chester Upland School District, and Order that:

a.    Defendant pay Plaintiff the difference between her salary, compensation and benefits and the salary, compensation and benefits of the male employees hired to replace her when she was constructively discharged, plus pre and post-judgment interest, costs of suit and attorney and expert fees as allowed by law; and

b.    Granting any other such relief as this Honorable Court deems just and fair.

Respectfully submitted,
POZZUOLO RODDEN, P.C.

Dated: 3/8/2021

BY: _____
JUDITH P. RODDEN, ESQUIRE
MARY N. YURICK, ESQUIRE
2033 Walnut Street
Philadelphia, PA 19103
Atty. Nos.: 87646/313172
Telephone.: (215) 977-8200
Attorneys for Plaintiff Sharon
Brokenbough

## <u>VERIFICATION</u>

     I, Sharon Brokenbough, hereby verify that the foregoing averments contained in the within Complaint are true and correct to the best of my knowledge, information and belief, and understand that false statements are subject to penalties relating to unsworn falsifications to authorities.

DATED: _3/3/2021_

BY: _____

               SHARON BROKENBOUGH

# Exhibit "A"



U.S. Department of Justice
Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

February 16, 2021

Ms. Sharon Brokenbough
c/o Judith P. Rodden, Esquire
Law Offices of Pozzuolo & Rodden
2033 Walnut Street
Philadelphia, PA  19103

Re: EEOC Charge Against Chester Upland School District
    No. 530202003873

Dear Ms. Brokenbough:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

    The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Pamela S. Karlan
Principal Deputy Assistant Attorney General
Civil Rights Division

by    /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Philadelphia District Office, EEOC
    Chester Upland School District

# Exhibit "B"

**Sharon P. Brokenbough**
**Chief Operating Officer**
Chester Upland School District
232 W. 9th Street, Chester PA 19013, 1st Floor Admin. Suite
sbrokenbough@chesteruplandsd.org
610-447-3655

Begin forwarded message:

> **From:** Sharon Brokenbough
> <sbrokenbough@chesteruplandsd.org>
> **Date:** October 18, 2019 at 3:04:40 PM EDT
> **To:** Juan Baughn <jbaughn@chesteruplandsd.org>
> **Subject: Official Request for Relief**
>
> Dr. Baughn,
>
> I've had some time to think about how I would handle my experience here at the District; and in the absence of an HR Director, I am putting into writing my complaint on the continued inappropriate behavior I have had to endure in recent months.
>
> I have twice made you aware of receiving what I would call inappropriate phone calls at inappropriate times from Mr. Anthony Johnson – School Board President.  These calls have come as late as 10pm on my personal cell phone from Mr. Johnson's District issued phone. (Logs can be provided) I have also requested that the message be relayed to Mr. Johnson that calls at that time that are not of an emergent nature or District related are inappropriate. Not only do they continue to happen; I was recently reprimanded for not returning a phone call that I received on the evening of October 7, 2019 at 7:48pm.  To which I was having an anniversary dinner with my Husband. I have expressed on several occasions that my conversations with Mr. Johnson have made me feel uncomfortable, been unpleasant and at times threatening.  I asked Mr. Johnson to put his requests to me in writing in the summer of 2019, to which he vehemently hung up the phone in my ear after stating "You want to start playing these games...let's play"

3

I expressed to you on 9/11/19 that I was concerned about Mr. Johnson speaking very negatively about me to members of the Chester Upland community. You told me not to worry because it was not you or Peter Barsz making the statements. I continue to see this as a personal and professional attack on my character. Due to this fact, my reprimand for not returning his call from the evening of 10/7/19 (7:48pm) added insult to injury.

Since then, not only has my professional reputation been attacked, I have been stripped of one of my departments, due to the fact that I am not allowed to hold the Director of that department accountable because of his relationship with Mr. Johnson. Before this, there were several meetings held that were Facility/Maintenance related to which I was not invited to nor privy to; leaving me feeling excluded.

In addition to being harassed, and not respected as a professional, it is my personal opinion that this District has a culture of belittling and having a dismissive demeanor towards women. I am personally offended by being referred to as 'she' or 'her' when I am present and for women professionals to be referred to as "gals" in meetings. Just today, myself, along with members of my staff were disrespectfully yelled at by a male Principal, who has a habit of speaking to myself and female members of my staff in a very condescending way. It was so bad, that I had to end the call.

This is also evident in the lack of professional courtesy I have received since February 2019 when I first asked for a contract. Although it has been communicated through the Solicitor that it is the intention of the Receiver to grant me a contract (as my predecessor had the privilege of) I have continued to receive the run around. I have also made several suggestions to this District that would have provided cost savings and efficiency, but it is my opinion that my suggestions are disregarded; until someone else (usually a male) suggests it, then it can be acted on. Examples of this are the outsourcing of Grounds, as well as, Security.

I also feel like I am now being harassed by a member of Mr. Johnson's inner circle, Ronald Simonson. Mr. Simonson continues to try to 'throw me under the bus' and make matters that are not of great importance seem like some colossal mistake on my part; as evidenced by his e-mail to you and Shelly on 10/14/19 at 8:28pm. I had just had a conversation about this on Thursday evening in a meeting with the Board President and other members of the Board, to which he was even confused about the distinction between supplies and equipment; Monday was a District holiday and then a very negative e-mail gets sent Monday evening on 10/14/19 (Columbus Day holiday) to which I had already spoken to you about that very afternoon. This is no coincidence. I expressed to you on Tuesday morning that I felt this e-mail to be harassing in nature. I have not received a response. I am starting to feel like this is some kind of set-up.

After expressing several times that I am uncomfortable being in the presence of Mr. Johnson alone, I receive a phone call from you Thursday afternoon that he is 'dropping by' to see me.  This is the second time in two weeks that Mr. Johnson has 'dropped by' and appeared in my office for minor things. I once again had to inquire about who would be present with me as I am uncomfortable with being with Mr. Johnson alone, you suggested that I get someone from my staff to do so.

As in the past, this undue stress and continued hostile work environment is once again affecting my emotional and physical well-being.  I am now officially requesting that something be done to look into and address these issues and remedy this situation as soon as possible to avoid further action on my part.

Respectfully submitted,

Sharon

**Sharon P. Brokenbough, MBA, PHR, SHRM-CP, CPC**
**Chief Operating Officer**
Chester Upland School District
232 W. 9th Street, Chester PA 19013, 1st Floor Admin. Suite
E-mail: sbrokenbough@chesteruplandsd.org
Phone: 610-447-3655
Fax:   610-447-3675